IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HAMMEL COMPANIES, INC.; PITT OHIO EXPRESS, LLC; PITT OHIO EXPRESS, INC., | ) ) ) |
| Plaintiffs, | ) Civil Action No. ) |
| v. | ) ) ) JURY TRIAL DEMANDED |
| OOSHIRTS, INC., d/b/a/ TEECHIP; | ) ) |
| Defendants. | ) |

**PLAINTIFFS' BRIEF IN SUPPORT OF THEIR
MOTION FOR PRELIMINARY INJUNCTION**

Plaintiffs Hammel Companies, Inc; PITT OHIO Express, LLC; and PITT OHIO Express, Inc. (collectively "PITT OHIO") move this Court to enter a Preliminary Injunction in their favor and against Defendant ooShirts, Inc. d/b/a/ TeeChip ("TeeChip") to prohibit TeeChip from accepting, marketing, and profiting from the unauthorized use of PITT OHIO's several trademarks.  PITT OHIO also asks this Court to determine that the appropriate Fed. R.C.P. 65 security for the preliminary injunction is $0.00.

**I.    FACTS**

Plaintiff Hammel Companies, Inc. is the owner of several trademarks ("Protected Materials"), which are each licensed to affiliate-Plaintiffs PITT OHIO Express, Inc. and PITT OHIO Express, LLC.  In addition to long-time, regular use of the Protected Materials, PITT OHIO owns federally-registered trademarks in the form of its name, PITT OHIO,  and the text logo that most often accompanies its use.  *See* Summary of Protected Materials, attached as Exhibit A.  A closely held company with a strong regional and national reputation, PITT OHIO places tremendous business value in its reputation and brand.  Thus, the company employs

internal and external measures to maintain consistency in PITT OHIO's presentation to the public.

Defendant ooShirts, d/b/a Teechip ("TeeChip") operates an online business wherein it solicits and accepts designs from public users; prints those designs on clothing and other products; markets the products online, primarily through targeted social media advertising; sells the products to public customers and users; and profits from the sale of its products.  On its website, Teechip promises that the company "contractually prohibit[s its] users from designing or selling merchandise that infringes the intellectual property rights of third parties (including without limitation copyright, trademark, and related rights)." *See* TeeChip Policies, attached as Exhibit B.

Despite TeeChip's promise that it does not permit the unauthorized use of materials that impede on the intellectual property rights of another, TeeChip has, on multiple occasions and despite repeated requests to cease, accepted, marketed, sold, and profited from the use of Protected Materials.  The communications between TeeChip and PITT OHIO began as early as March 2016, when an employee of PITT OHIO discovered a design on TeeChip's website that utilized Protected Materials.  That design, found this time on a sweatshirt, read: "I work at PITT OHIO because I don't mind hard work[.]  If I wanted to do something [e]asy, I'd call your mom." *See* Communications Between TeeChip and Pitt Ohio, attached as Exhibit C.  On March 2, 2016, Tiffany Schneider, an employee of PITT OHIO, called TeeChip to notify the company about the improper reproduction of Protected Material.  During that call, Ms. Schneider was assured that the objectionable sweatshirt would be removed within 2-3 days.  Ms. Schneider confirmed her telephone conversation in a March 2, 2016 e-mail to TeeChip using the proper method and language required by the company to notify it of any potential infringement.

In May 2016, the design reappeared on TeeChip's website, this time as a t-shirt for sale. In early May, an employee of PITT OHIO discovered that the design and, as before, Ms. Schneider called TeeChip to demand that the company remove the design. Mr. Schneider memorialized that conversation per the company's requested method and language in a May 11, 2016 e-mail to TeeChip.

In June 2016, the Protected Materials again reappeared on TeeChip's website. A PITT OHIO employee discovered a sweatshirt design that read: "Never underestimate the power of a woman who works at PITT OHIO." Once more, Ms. Schneider contacted TeeChip to notify the company of the violation. She documented that conversation per the company's requested method and language in a May 11, 2016 e-mail to TeeChip.

In light of the repeated, willful offenses, on June 10, 2016, PITT OHIO, through counsel, sent a cease and desist letter ("Letter") to TeeChip demanding that the company "cease and desist from any further action which infringes upon the PITT OHIO trademarks and copyrights." *See* Cease and Desist Letter, attached as Exhibit D. In addition to ceasing the design and distribution of products containing Protected Materials, the Letter requested, *inter alia*, the names of individuals requesting or purchasing designs with Protected Materials, an accounting of all sales of Protected Materials, and an assurance that TeeChip would cease producing and selling products with Protected Materials. TeeChip declined to respond.

Rather than comply with PITT OHIO's request or honor its own promise to respect the intellectual property rights of others, on July 14, 2016, an employee of PITT OHIO again discovered that the original design, "I Work at PITT OHIO Because…", had reappeared for sale on TeeChip's website. Then, on August 29, 2016, an employee of PITT OHIO discovered yet another design produced by TeeChip which read: "I work at PITT OHIO. I solve problems you

3

don't know you have in ways you can't understand." Those products were advertised on Facebook. *See* Designs and Advertisements, attached as Exhibit E.

For over six months, TeeChip has flagrantly and without authorization used Protected Materials and sold merchandise containing Protected Materials to the public knowing and intending that the public would associate that merchandise with PITT OHIO.

## II. LEGAL STANDARD

Given the extraordinary nature of a preliminary injunction, such a motion places specific burdens on the moving party. As a threshold matter, it is a movant's burden to show that the "preliminary injunction must be the only way of protecting the plaintiff from harm." *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992). Thus, a movant is expected to satisfy several requirements to show his entitlement to a preliminary injunction:

> Four factors govern a district court's decision whether to issue a preliminary injunction: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief, (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest.

*Gerardi v. Pelullo*, 16 F.3d 1363 (3d Cir. 1994) (quoting *SI Handling Systems, Inc. v. Heisley*, 753 F.2d 1244 (3d Cir. 1985)).

"[O]ne of the goals of the preliminary injunction analysis is to maintain the status quo, defined as the last, peaceable, noncontested status of the parties." *Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700 (3d Cir. 2004) (citing *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir.1990)). *See also* 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 30:50 (4th ed. 2003) ("The status quo to be preserved is not the situation of contested rights. . . In a trademark case, [it] is the situation prior to the time the junior user began use of its contested mark: the last peaceable, non-contested status.").

### III. ARGUMENT

**1. PITT OHIO is entitled to a preliminary injunction prohibiting the further acceptance and use of designs utilizing Protected Materials, as well as the profit derived therefrom.**

For the reasons set forth herein, PITT OHIO is entitled to Order against TeeChip and its affiliates or others in active participation with TeeChip, precluding and restraining them from accepting designs, producing any clothing or other good, marketing to prospective or existing customers, selling, or giving away any product or material bearing PITT OHIO's Protected Materials.

**A. PITT OHIO is likely to succeed on the merits of its claims arising under the Lanham Act and under Pennsylvania common law.**

PITT OHIO's federal and state claims carry substantially similar, if not the exact same, burdens in order to show that the company is likely to succeed on the merits of either set of claims. Indeed, this Court has held that federal and state common law claims of trademark infringement call for a showing that: 1) the materials at issue are protected by a valid and legally protectable trademark; 2) the plaintiff owns the trademark, and 3) a defendant's use of the trademark is likely to create confusion among consumers. *Componentone, L.L.C. v. Componentart, Inc.*, No. 02: 05CV1122, 2008 WL 4790661, at *5 (W.D. Pa. Oct. 27, 2008).

There is little dispute as to either of the two initial inquiries. As reflected in Exhibit A, PITT OHIO – or, more specifically, the parent company of many PITT OHIO entities, Hammel Companies, Inc. – owns exclusive rights to its text logo and that ownership is registered with the United States Patent and Trademark Office.

Even if the trademarks were not federally registered, Pennsylvania common law does not require such a formal definition of rights. Rather, "while a trade name may not be registered, or may be incapable of being registered, as a trademark, it is nonetheless entitled to protection

5

against infringement" under Pennsylvania common law "where it has become recognized by the general public as identifying certain products, groups, services, or goodwill of a particular business concern." *Ress v. Barent*, 548 A.2d 1259, 1263 (Pa. Super. 1988) (citation omitted). Importantly, Pennsylvania courts decline to place emphasis "on competition itself, but rather on injury suffered by the plaintiff and the public. Use of trademarks and trade names by third parties has been restrained in connection with *non*-competing businesses, where it is clear that the third party defendant is not diverting away custom and trade." *Id*. (citing *Thomson-Porcelite Co. v. Harad*, 51 A.2d 605, 607 (Pa. 1947). Thus, where a plaintiff's marks have been misappropriated, he "may be damaged in ways other than the diversion of business" such as false impression of a relationship between the plaintiff and defendant or reputational harm incurred due to the misuse of his marks. *Id*.

Turning to the issue of public confusion, under either federal statutory claims or Pennsylvania common law claims, he owner of a valid and legally protectable mark such as PITT OHIO, must show only that a defendant's use of a similar mark for its goods 'causes a likelihood of confusion.'" *Kos Pharmaceuticals*, *supra* at 708-709 (citing *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.,* 237 F.3d 198, 210 (3d Cir. 2000)). The Third Circuit has further explained that a "[l]ikelihood of confusion exists when consumers viewing the mark would probably assume that the product or service it represents is associated with a source of a different product or service . . . identified by a similar mark." *Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 589 F.2d 1225, 1229 (3d Cir. 1978). In order to assess whether a party's use of trademarked materials will cause a likelihood of confusion among end users or the market, a court is to consider a nonexhaustive list of considerations referred to as *Lapp* factors. *Id*.

Those factors are: 1) the degree of similarity between the owner's mark and the alleged infringing mark; 2) the strength of the owner's mark; 3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; 4) the length of time the defendant has used the mark without evidence of actual confusion arising; 5) the intent of the defendant in adopting the mark; 6) the evidence of actual confusion; 7) whether the goods, competing or not competing, are marketed through the same channels of trade and advertised through the same media; 8) the extent to which the targets of the parties' sales efforts are the same; 9) the relationship of the goods in the minds of consumers, whether because of the near-identity of the products, the similarity of function, or other factors; and 10) other facts suggesting that the consuming public might expect the prior owner to manufacture both products, or expect the prior owner to manufacture a product in the defendant's market, or expect that the prior owner is likely to expand into the defendant's market.  *A & H Sportswear*, *supra* at 215. PITT OHIO posits that the factors weigh in its favor.

It is not disputed that PITT OHIO and TeeChip operate different types of businesses; however, such a consideration is immaterial to the weightiest *Lapp* factors.  For instance, TeeChip, in its designs and merchandise, inexplicably uses the PITT OHIO name and, in many cases, its trademarked typeface logo.  The similarities, coupled with the federal registration of PITT OHIO's trademarks and the exclusive use of the Protected Materials by PITT OHIO entities, strongly suggest that the first two factors, which are inarguably the most material, favor the grant of PITT OHIO's request for a preliminary injunction.

Consideration of additional factors also favors the grant of that request.  For example, TeeChip's intent is, at best, selfish, and at worst, nefarious and intentionally deceptive. Realistically, TeeChip continues to flagrantly use PITT OHIO Protected Materials in order to

profit from PITT OHIO's reputation and status as a major employer. The use is not accidental, as reflected by PITT OHIO's multiple requests and explanations that each design has infringed PITT OHIO's intellectual property rights. Similarly, it is not unreasonable to consider that a company like PITT OHIO markets branded merchandise, even though PITT OHIO has not and would not market branded merchandise containing crude "your mom" jokes. Thus, despite disparate business plans and marketing strategies, the promotional potential of TeeChip's business is a reasonable expansion or outgrowth of PITT OHIO's own initiatives.

A principal basis for many of PITT OHIO's claims is that the public will incorrectly believe that TeeChip's products originated with or were authorized by PITT OHIO, thereby disparaging, diminishing, and diluting PITT OHIO's brand. While the *Lapp* factors do not necessarily address this specific instance, their reasonable application to the facts of this matter suggest that the public is likely to be confused by TeeChip's use of Protected Materials and, thus, demonstrate a likelihood of success on the merits of PITT OHIO's claims arising under the Lanham Act and Pennsylvania common law, both of which entitle PITT OHIO to injunctive relief.

### B. PITT OHIO will suffer irreparable harm if TeeChip is permitted to continue its unauthorized use of Protected Materials.

The second factor for this Court's consideration of a request for a preliminary injunction is whether the continuing conduct complained of by a movant will cause irreparable harm to that movant. For the reasons that follow, the continued unauthorized use by TeeChip of Protected Materials will result in irreparable injury to PITT OHIO in the form of confusion of origin, reputational harm, and denigration of goodwill.

Irreparable harm "must be of a peculiar nature, so that compensation in money alone cannot atone for it." *Morton v. Beyer*, 822 F.2d 364, 372 (3d Cir.1987) (citation omitted).

Grounds for finding irreparable injury include loss of control of reputation, loss of trade, and loss of good will.  Importantly, the Court of Appeals for the Third Circuit has held that, "once the likelihood of confusion caused by trademark infringement has been established, the inescapable conclusion is that there was also irreparable injury."  *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3rd Cir. 1998).

In *Ambassador East, Inc. v. Orsatti, Inc.*,257 F.2d 79,(3d Cir.1958), that same Court held that a plaintiff's:

> mark is his authentic seal; by it he vouches for the goods which bear it; it carries his name for good or ill. If another uses it, he borrows the owner's reputation, whose quality no longer lies within his own control. This is an injury, even though the borrower does not tarnish it, or divert any sales by its use[.]

Id. at 82.  *See Opticians Association of America v. Independent Opticians of America*, 920 F.2d 187 (3d Cir. 1990); *Pedi-Care, Inc. v. Pedi-A-Care Nursing, Inc.*, 656 F. Supp. at 457 (D.N.J.1987) (where there is loss of control, "the potential exists that defendant's use of a [mark] confusingly similar to plaintiff's ... mark will result in damage to plaintiff's reputation.").

Such is precisely the case herein – and further, this is precisely the basis for PITT OHIO's requested relief in the underlying Complaint.  At each Count, PITT OHIO alleges that: 1) the public will be or has been misled as to the origin of TeeChip's products; 2) any other party's unauthorized use of protected materials, herein TeeChip, renders PITT OHIO unable to control the image that it has carefully crafted for public portrayal; and 3) TeeChip has misappropriated the reputation and goodwill earned and protected by PITT OHIO for its own use and profit.  While the requested redress is largely financial in nature, the injuries alleged by PITT OHIO are not.  Rather, those injuries focus on the long-term reputational and intangible injury caused by TeeChip's unauthorized use of Protected Materials.  Thus, PITT OHIO has adequately

9

alleged and supported that it has and will continue to suffer irreparable reputational harm as a result of TeeChip's flagrant and unauthorized use of Protected Materials.

### C. A balance of anticipated purported injury resulting from a preliminary injunction weighs in favor of PITT OHIO.

When evaluating whether injunctive relief is appropriate, a court balances the hardships to the respective parties. This balancing test is to ensure that the issuance of an injunction would not harm the infringer more than a denial would harm the mark's owner. *Opticians Assoc. of America*, *supra* at 197. Here, that test weighs heavily in favor of PITT OHIO.

First, the acceptance, marketing, and sale of products bearing Protected Materials likely account for just a small portion of TeeChip's overall business activities. In contrast, the brand and reputation encapsulated in the Protected Materials is an essential element of the daily operation and growth of PITT OHIO's business. An Order demanding that TeeChip cease, at this point temporarily, the unauthorized use of *only* PITT OHIO's Protected Materials is of minimal import when compared to the sprawling denigration of PITT OHIO's reputation and brand that accompany that unauthorized use. Because the Protected Materials represent years of PITT OHIO operations and only a small portion of TeeChip's business, this Court' balancing test weighs heavily in PITT OHIO's favor.

Second, cessation of use and profit from Protected Materials is appropriate under TeeChip's own operating procedures. While TeeChip has refused to oblige PITT OHIO's requests to cease the sale of designs using Protected Materials, those requests come in response to TeeChip's own policies regarding intellectual property. *See* TeeChip Policies, attached as Exhibit B. By instituting and publicly acknowledging these policies, TeeChip has willingly accepted any harm that would result from a company's enforcement of its intellectual property rights. Further, this policy, as stated, recognizes that TeeChip is not authorized to reproduce any

company's trademarks or copyrights.  Thus, an Order will cause minimal injury to TeeChip, and certainly no injury in excess of the amount anticipated or accepted by TeeChip.

Third, the injunctive relief requested by PITT OHIO merely reflects TeeChip's duty under the federal and state law.  TeeChip has recognized that it is not permitted to reproduce copyrighted or trademarked materials and that PITT OHIO indisputably owns such trademarks.  A preliminary injunction will only apply the force of law to that recognition.

Finally, any harm to come to TeeChip would be purely economic and therefore readily ascertainable.  Even if this Court should find in TeeChip's favor on the substantive, underlying claim that TeeChip improperly used and profited from PITT OHIO's Protected Materials, any damage realized by TeeChip as a result of this preliminary injunction may be calculated and addressed by this Court.

### D. The public interest is best served by issuing the preliminary injunction as requested by PITT OHIO.

The final element to be considered by this Court in issuing a preliminary injunction is whether the public interest would be served by such an issuance – or, on the other hand, harmed by it.  As PITT OHIO's request for a injunctive relief is based upon a need to protect PITT OHIO's reputation by clarifying the origin of PITT OHIO's Protected Materials, the public interest will be served by issuing that injunction in order to prevent public confusion.

Deceiving consumers – which is the harm the Lanham Act is designed to prevent – is never in the public interest and the harm to goodwill and reputation cannot be quantified with any reasonable degree of accuracy.  As the Third Circuit has explained, "[p]ublic interest can be defined a number of ways, but in a trademark case, it is most often a synonym for the right of the public not to be deceived or confused." *Opticians Assoc. of America*, *supra* at 197-98 (finding that because a likelihood of consumer confusion created by the concurrent use of the marks at

issue, it followed that if such use continues, the public interest would be damaged); *Bill Blass, Ltd. v. Saz Corp.*, 751 F.2d 152, 156 (3d Cir. 1984) (noting that there is a public interest in the protection of the trademark and to avoid confusion in the public); *SK&F, Co. v. Premo Pharmaceutical Laboratories*, 625 F.2d 1055, 1057 (3d Cir.1980) (writing that "preventing deception of the public is itself in the public interest").

Largely at issue herein is the risk of misleading and deceiving the public. PITT OHIO is advocating for transparency and accuracy, while TeeChip's conduct represents outright deception as to the origin and meaning of the Protected Materials. The public interest is better served by issuing the requested preliminary injunction rather than allowing TeeChip to continue capitalizing upon the reputation and history of PITT OHIO for its own profit.

**2. This Court is entitled to waive the Rule 659(c) bond requirement.**

An exception to the Rule 65(c) requirement exists when the injunction raises no risk of monetary loss to defendant. *Zambelli Fireworks Mfg. Co. v. Wood,* 592 F.3d 412, 426 (3d Cir. 2010). This Court has discretion to waive the Rule 65(c) bond requirement if the hardships that PITT OHIO would suffer as a result of the bond requirement overwhelmingly outweigh the harm that TeeChip may suffer as a result of the injunction. *Elliott v. Kiesewetter*, 98 F.3d 47, 54 (3d Cir. Pa. 1996).

In *W S Int'l, LLC v. M. Simon Zook, Co*., 2014 U.S. App. LEXIS 8788 (3d Cir. May 9, 2014), the defendant made a product using equipment supplied by the plaintiff. The plaintiff distributed the product. After the business relationship disintegrated, distributor sued the producer for repossession of the equipment. The District Court preliminarily enjoined the producer from preventing the distributor from retrieving the equipment. The district court did not require Rule 65(c) security because the producer likely had no right to the equipment, and therefore would not be harmed by the injunction.

Here, and as set forth above, TeeChip has no right to use the Protected Materials, and it certainly has no right to profit from that use. Further, the issuance of a preliminary injunction will only afford the force of law to the promises already offered and set forth by TeeChip to refrain from infringing upon the intellectual property rights others. Therefore, TeeChip will suffer no harm and this Court should waive security.

## IV.  CONCLUSION

For the reasons set forth within, PITT OHIO is entitled to injunctive relief prohibiting the further unauthorized misappropriation of its Protected Materials by TeeChip. Therefore, PITT OHIO respectfully requests that this Court:

1. Schedule an expedited hearing of this Motion;

2. Find that ooSHIRTS, Inc. d/b/a/ TeeChip has violated PITT OHIO's intellectual property rights by unlawfully using, printing, and profiting from PITT OHIO's Protected Materials; and

3. Enter an Order against TeeChip and its agents, representatives, servants, successors and assigns, and all others in active concert or participation with TeeChip, precluding and restraining them from accepting designs, producing any clothing or other good, marketing to prospective or existing customers, selling, or giving away any product or material bearing PITT OHIO's Protected Materials.

                                      Respectfully submitted,

                                      BURNS WHITE LLC

                                      */s/*  Katherine J. McLay
                                      Mark Stadler, Esq. (PA ID 35169)
                                      Manning J. O'Connor II (PA ID 38983)
                                      Katherine J. McLay (PA ID 320191)

Four Northshore Center
106 Isabella St.
Pittsburgh, PA 15212
Tel: (412) 995-3057
Fax: (412) 995-3300

Email:    mjstadler@burnswhite.com
          mjoconnor@burnswhite.com
          kjmclay@burnswhite.com

Attorneys for Plaintiffs